UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

RICHARD COLE, et al.,

    Plaintiffs,

    v.

MARK SEVIER,

    Defendant.

Case No. 3:18-CV-642 JD

**<u>OPINION AND ORDER</u>**

Plaintiffs Juma Haywood and Richard Cole sued Warden Mark Sevier claiming that the

housing conditions at the Westville Correctional Facility violated their Eighth Amendment rights

against cruel and unusual punishment. The case was scheduled for trial before a jury on February

7, 2022, but on January 31, Plaintiffs' counsel notified the Court that the parties had settled. (DE

101.) The Court vacated the trial and set March 31 as the deadline for dismissal papers.

On March 8, Defendant filed a motion asking the Court to enforce the settlement

agreement. (DE 106.) According to Defendant, his former counsel, Conner Dickerson, and

Plaintiffs' counsel, Christopher Myers, had orally agreed on January 31 to settle the case, with

each Plaintiff to be paid $500 in exchange for a full release of Defendant.[1] However, on

February 15 and, again, on March 4, Plaintiff Richard Cole filed letters with the Court insisting

that he "has not accepted no settlement." (DE 104 at 1.) In particular, he claims that he told Mr.

Myers that he would agree to settle the case for $500 if Mr. Myers would have Sam Bolinger, a

criminal defense attorney to whom Mr. Myers referred Mr. Cole, dispose of an unrelated

criminal case against Mr. Cole. (DE 104, Cole Letter to Court at 2 ("Myers on the phone [said],

---

[1] With his motion, Defendant attached the unsigned settlement agreement. (DE 106-1.)

Richard (If) I get Sam Bolinger to get the judge, Custer Jason C. to correct this will you sign this 500 hundred settlement. I said, ONLY if this warrant is set straight." (quoted text is as it appears in the letter).) Apparently, the criminal case is still pending against Mr. Cole, so he maintains that he is not bound by the settlement agreement. *Id.*

Defendant's motion to enforce includes an email from Mr. Myers to Mr. Dickerson in which he expresses his surprise at Mr. Cole's letters to the Court and assures Mr. Dickerson that he never promised Mr. Cole that the settlement agreement would be conditioned upon the disposal of the criminal case against him. Here is Mr. Myers's email in its entirety:

> Dear Alexander Carlisle:
>
> You probably have received the same letters I have from Mr. Richard Cole. I truly am at a loss for words—of course I never told Mr. Cole that the settlement in our civil case was somehow conditional on a certain result occurring in his criminal cases (which were being separately handled by another lawyer, Sam Bolinger). In my opinion, there is no defense to a Motion to Enforce the Settlement Agreement, should you file one in the event Mr. Cole does not sign the settlement agreement. However, given his letters, I am wondering if the State would be agreeable to drafting two separate settlement agreements, one for Mr. Cole and one for Juma Haywood. Each of them settled their cases for $500.00 apiece. Please call me so that we may discuss this matter.

(DE 106-3.)

In his motion, Defendant maintains that, under contract law, Mr. Cole has become bound by Mr. Myers's representation that Mr. Cole had accepted the terms of the settlement. (*Id.* at 3–4.) According to Defendant, "[i]t is clear that Mr. Cole authorized Mr. Myers to settle his case for $500" (*Id.* at 4), and "[i]t cannot be disputed that the parties, through counsel, agreed to settle this case for $1,000" (*Id.* at 106.) No response has been filed to Defendant's motion.[2]

---

[2] In his third letter, Mr. Cole complains that Mr. Myers and Mr. Bolinger lied to him, and states that "[he] fired Christopher Myers and Assoc's for also lying," but Mr. Myers remains the attorney of record in this case.

* * * * *

A settlement agreement is a contract that is enforceable under ordinary state law contract principles. *Pohl v. United Airlines, Inc.*, 213 F.3d 336, 338 (7th Cir. 2000). "Issues regarding the formation, construction, and enforceability of a settlement agreement are governed by local contract law, and therefore we must look to the law of Indiana in deciding this claim." *Id.* Settlement agreements can be oral and do not require settlement draft or signed releases to be enforceable. *Zimmerman v. McColley*, 826 N.E.2d 71, 77 n.2 (Ind. Ct. App. 2005) ("Indiana law has long-recognized that 'in general, settlement agreements need not be in writing to be enforceable.'" (citing *Vernon v. Acton*, 732 N.E.2d 805, 809 (Ind. 2000)). A contract is binding if there's an "offer, acceptance of the offer, and consideration." *Straub v. B.M.T.*, 645 N.E.2d 597, 598 (Ind. 1994). As an agent of his client, an attorney can bind a client to a settlement if he has express, implied, or apparent authority or if the client creates appearance of such authority:

> As the Indiana Supreme Court held in *Koval v. Simon Telelect, Inc.*, 693 N.E.2d 1299, 1301 (Ind. 1998), in order to bind a client to a settlement, an attorney must have either express, implied, or apparent authority, or must act according to the attorney's inherent agency power. The *Koval* court further held, however, that retention of an attorney does not, in itself, confer implied or apparent authority to settle. *Id*. The authority to settle, therefore, derives from other actions of the client with respect to the attorney or third parties, including but not limited to express grants of actual authority. For instance,
>
>> [t]he client may not intend for the attorney to settle a claim but may nonetheless imply that intention to the attorney. If so, the client is bound by a resulting settlement. Further, both apparent authority and inherent agency power may be created by actions of the client in its dealings with third parties even if the attorney knows there is no actual authority. Under these circumstances, the client is bound even if it is a breach of the attorney's professional obligations to make the commitment. *Id*. at 1303 n.6.

*Pohl*, 213 F.3d at 338.

* * * * *

3

On June 1, 2022, the Court held an evidentiary hearing by video to determine to what extent Mr. Myers was authorized, if at all, to settle Mr. Cole's case with the Defendant. Having heard Mr. Cole and Mr. Myers testify, the Court finds that Mr. Myers had express authority to settle the case on Mr. Cole's behalf for $500 without the precondition of getting the warrant dismissed.

At the hearing, Mr. Myers testified that, in December 2020, Mr. Cole told him over the phone that he would settle the case for $500 if Mr. Myers would also reach out to attorney Sam Bolinger for assistance in a pending criminal case against Mr. Cole to terminate an outstanding warrant against him. (Hrg. Tr. at 10, 20.) On January 31, 2022, Mr. Myers confirmed in a letter to Mr. Cole that he had contacted Mr. Bolinger as agreed and settled the case for $500 with the Defendant. Mr. Cole responded on February 8, 2022, stating that he had not accepted the settlement because the criminal case was still pending. (Hrg. Tr. at 12.) Mr. Myers further testified that he did not promise Mr. Cole that the settlement agreement would be conditioned upon the resolution of the criminal case. What is more, Mr. Myers expressed his clear understanding that the two cases were unrelated and had no bearing upon each other. According to Mr. Myers, he has handled many civil rights cases brought by prisoners and, in his experience, the settlement in a civil case can never be conditioned upon a certain result occurring in a criminal case. (Hrg. Tr. at 13.)

Mr. Myers observed that in his conversations in December, he found Mr. Cole to be much more coherent than he was at the hearing (Hrg. Tr. at 21 (. . . Mr. Cole's condition today is somewhat dramatically different than it was back then.") and that he has had other cases with Mr. Cole so he was used to Mr. Cole's speaking pattern and behavior (*id*. at 21–22).

Mr. Cole also testified at the hearing. Mr. Cole appeared rather frail, having suffered several strokes over the past 6 months and had some difficulty speaking clearly. He has been in the prison's hospital since at least December 2021. He acknowledged that he could not recall phone conversations with Mr. Myers:

> THE COURT: . . . So you -- I think you began your answer by saying you don't remember those conversations on the phone, correct?
>
> MR. COLE: I don't remember nothing back then, Your Honor, I was having strokes.
>
> THE COURT: Okay.
>
> MR. COLE: I have been in the hospital and still am in the hospital.

(Hrg. Tr. at 23–24.)

Throughout the hearing, Mr. Cole maintained that, in communicating with Mr. Myers, he conditioned his settlement agreement upon Mr. Myers getting Sam Bolinger to dismiss the warrant against him.

The Court finds that Mr. Cole authorized Mr. Myers to settle the instant case for $500 with the understanding that Mr. Myers would contact attorney Sam Bolinger *in an attempt* to dismiss the pending warrant against Mr. Cole. Mr. Cole did not condition his settlement upon the State actually dismissing the criminal case but only upon Mr. Myers assisting him with trying to get the case dismissed. The Court believes Mr. Myers's testimony that, as an experienced civil rights attorney, he would not have agreed to negotiate with the Defendant on the basis of an unrelated criminal case because he knew that the two cases had nothing to do with each other. In other words, there's not even a possibility that perhaps Mr. Myers misunderstood Mr. Cole's directives. No competent attorney would have believed that he had any chance of resolving Mr. Cole's criminal case within the context of his civil suit. Accordingly, had Mr. Cole demanded

such a condition, Mr. Myers would have known that no settlement agreement was possible and any negotiations would have been futile. Finding Mr. Myers's testimony truthful, persuasive, and consistent with the general norms of representation, the Court holds that Mr. Myers had express authority to settle Mr. Cole's case on his behalf with the Defendant for $500. At the same time, the Court need not conclude that Mr. Cole is lying in his testimony. Rather, the inconsistencies may very well arise out of his failure to recall the exact circumstances of his previous conversations with Mr. Myers due to the numerous health conditions he has suffered during the past six months.

Mr. Cole is bound by the settlement agreement between Mr. Myers and Defendant's counsel. There is no dispute that Mr. Myers was Mr. Cole's attorney when he was negotiating the settlement agreement on behalf of Plaintiffs. Again, the Court finds that Mr. Cole expressly authorized Mr. Myers to settle the instant case for $500 with the understanding that Mr. Myers would contact attorney Sam Bolinger in an attempt to dismiss the pending warrant against Mr. Cole. Therefore, Mr. Myers had actual authority to negotiate on Mr. Cole's behalf, *see Northern Assurance Company of Am. v. Summers*, 17 F.3d 956, 960 (7th Cir. 1994) (citing *Ind. Dept. of Pub. Welfare v. Chair Lance Serv., Inc.*, 523 N.E.2d 1373, 1377 (Ind. 1988) ("Actual authority is that authority that a principal gives, either expressly or impliedly, to his agent."); *Scott v. Randle*, 697 N.E.2d 60, 66 (Ind. Ct. App. 1998) ("Actual authority is created by written or spoken words or other conduct of the principal which, reasonably interpreted, causes the agent to believe that the principal desires him so to act on the principal's account. The focus of actual authority is the belief of the agent."), and he acted consistently and within the bounds of that authority. That is, Mr. Myers did contact Mr. Bolinger and he did settle the case for $500 with the Defendant as agreed to by Mr. Cole. There was an offer, acceptance of the offer, and consideration. The

6

agreement is memorialized in writing, which Defendant submitted with his motion. The terms of

the agreement plainly provide that Plaintiffs would be paid "$1,000 in full satisfaction of any and

all claims against [Defendant] that [Plaintiffs] brought or could have brought related to the

events alleged in the operative complaint . . . ." (DE 106-1 ¶ 4.) Accordingly, the court finds that

Mr. Myers executed a valid contract and, as Mr. Cole's attorney, bound him to its terms.

Therefore, the Court will enforce this settlement agreement.

The Court GRANTS Defendant's Motion to Enforce Settlement Agreement (DE 106)

and ORDERS as follows:

- Defendant is ordered to pay the settlement sum of $500 by check made payable to
  Christopher C. Myers & Associates in trust for Richard Cole, within 28 days of the entry
  of this order;

- All claims that were or could have been made by Richard Cole in this matter are
  DISMISSED WITH PREJUDICE, thereby releasing all such claims that Richard Cole
  did or may have had as stated in the "Release and Settlement Agreement" (DE 106-1);

- A judgment consistent with this order will be entered.


SO ORDERED.

ENTERED: June 15, 2022

                                        _____/s/ JON E. DEGUILIO_____
                                        Chief Judge
                                        United States District Court